## JAMES O. SAFFORD & CO. v. L. P. GALLUP, S. R. DAVIS, D. H. BUCK & CO.

### [IN CHANCERY.]

*Tenants in Common. Damages on Replevin Bond. Officer attaching Property owned in Common may take Possession of the Whole, when, &c. Commingling Property by Agent. Supplemental Bill. Court of Equity.*

1. A court of equity will not take cognizance of a cause where the parties have a full and adequate remedy at law; thus, when hides, in the process of tanning, owned by tenants in common, were attached, taken possession of by the creditors of *one* of the tenants, and the others replevied, expended money in completing their manufacture, sold, and judgment was finally rendered in the replevin suit for their return; on a bill being brought to annul said judgment and restrain proceedings on the replevin bond, it was dismissed on the ground that

the orators had a perfect defence *at law* to an action on said bond, that is, that they could *reduce the damages* to the extent of their interest, as tenants in common, in the property.

2. If the Statute of Limitations,—Gen. Sts. c. 35, s. 28,—has affected the *replevin bond,* the rights of the parties would have to be settled on the *injunction bond.*

3. The officer, for the purpose of making the attachment and sale of the one tenant's interest, had a right to take and retain possession of all the hides.

4. Although the judgment in the replevin suit for a return of the hides was correct, yet it is not *conclusive as to their ownership;* only, that the debtor had an *undivided interest in them,* and that the officer was entitled to their return that he might sell it.

5 Where an agent commingled the money of his principal with his own, without the knowledge of the principal, and with the commingled money purchased hides, in the execution of his agency, so far as the creditors of the agent are concerned, *they belonged to the principal ;* but if the agent without the knowledge or fault of the principal commingles his own *property* with that of his principal, so that the same is incapable of separation, he and the principal become *tenants in common* of such property, as to the agent's attaching creditors.

.6 Office of supplemental bill stated: to bring new facts upon the record; or new parties before the court, &c.. under what circumstances.

7. Strictly supplemental matter cannot confer jurisdiction upon the court if it had no jurisdiction of the original bill.

THIS cause was tried at the February Term, 1880, Orleans County; REDFIELD, Chancellor. The bill was dismissed, *pro forma,* and appeal allowed to the Supreme Court. The facts appear in the opinion.

*H. S. Royce* and *Crane & Alfred,* for orators.

The orators were the owners of the hides and leather, at least to the amount of their money which was expended in the purchase of the hides, and the amount they expended to preserve the leather from injury and fit it for market. *Hall* v. *Williams,* 27 Vt. 405 ; *Rideout* v. *Burton,* 27 Vt. 383 ; 1 Story Eq. 468 and 623 ; *Hart* v. *Ten Eyck,* 2 Johns. Ch. 108 ; *Capron* v. *Porter,* 43 Conn. 383, 390 ; *Pratt* v. *Bryant et al.,* 20 Vt. 333 ; 5 Wait's Actions and Defenses, 483–4–5–6. Principal and agent, under what circumstances, tenants in common. *Lewis* v. *Whittemore,* 5 N. H. 366 ; *Moore* v. *Bowman,* 47 N. H. 503–505 ; *Beaumont* v. *Crane,* 14 Mass. 400 ; *Rider* v. *Hathaway,* 21 Pick. 304–5. Confusion of goods. *Treat* v. *Barlow,* 7 Conn. 280 ; *Capron* v. *Porter,* 43 Conn. 390. *Replevin* will not lie in a case of this kind. *Hart* v. *Fitzgerald,* 2 Mass. 509 ; *Kimball* v. *Thompson,* 4 Cush. 441–5 ;

14 Gray, 449; *Leonard* v. *Whitney*, 109 Mass. 368. Orators have a lien for finishing the hides which equity will enforce. 1 Story Eq. 466, 505. An officer can take the *whole* property on a writ against *one* tenant in common; but can sell *only* that tenant's interest. 2 Mass. 81; 13 Met. 142; 15 Mass. 11. Judgment in the replevin suit did not affect the orators' title. 31 Vt. 249; Story on Bail. 28; 2 Story Eq. J., 1573; Freeman on Judg. s. 281; Reporter 8, 180.

*Young* and *Edwards & Dickerman*, for the defendants.

The court at law had full power to determine the matter in the replevin suit. Gen. Sts. c. 35, ss. 13, 16; *Poor* v. *Woodburn*, 25 Vt. 234; 4 Vt. 164; 16 Ib. 382; *Sprague* v. *Clark*, 41 Vt. 6; 44 Vt. 195; *Brown* v. *Smith*, 1 N. H. 36; 5 Mass. 343; therefore, he cannot resort to chancery. *Currier* v. *Rosebrook*, 48 Vt. 34, 75, 9; *Barrett* v. *Sargent*, 18 Vt. 365; 6 Allen, 503. The finding of the facts by the referee is conclusive. *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 332; Smith Lead. Cas. (5th ed.) 667, 671, 674; *Porter* v. *Guile*, 47 Vt. 620; *Collins* v. *Bennett*, 46 N. Y. 490; Mitford & Tyler's P. & P. 224; *Buck* v. *Spafford*, 35 Me. 526; 57 Me. 448; Story Eq. P. s. 780, a. A motion for a new trial affords a complete remedy at law. *Hendrickson* v. *Hinkley*, 17 How. 443; Daniell's Ch. P. & P. 1621, n. 6. The orators may make a full defence to a suit at law on the bond. Wells on Replevin, ss. 448, 457, 506, 794; *Wiseman* v. *Lynn*, 39 Ind. 250; *Davis* v. *Harding*, 3 Allen, 302; 17 Iowa, 158; 14 Gray, 450; *Hawley* v. *Warner*, 12 Iowa, 42.

The opinion of the court was delivered by

Ross, J. In the original bill the orators set forth the contract of August 1, 1874, by which they agreed to advance to Samuel Smith, of Troy, so much money as they saw fit, with which he was to purchase slaughter hides, and tan them, and send them to Boston to be sold by the orators. The hides were to be the property of the orators. The orators were to receive back the money advanced with interest and commission on the sales, and allow Smith eight cents per pound for buying and tanning. The profit

or loss arising from the transaction was to be shared equally between the orators and Smith. The orators also allege that they advanced to Smith during the spring and summer of 1875, large sums of money under the contract; that Smith mingled the same with his own money, and therewith bought slaughter hides in his own name, and also bought some on his own credit and with his own funds, and commingled the same all together in the process of tanning; that the defendant, Gallup, as officer, attached all said commingled hides, when in process of tanning, on writs in favor of the other defendants against Smith; that the other defendants obtained judgments in their suits, and were about to sell said hides on executions issued on the judgments, when the orators replevied all of the hides; that the replevin suit was referred, and at the hearing before the referee they first learned that Smith had commingled the money advanced by them with his own, and had purchased hides with the money thus commingled, and also had bought some of the hides with his own money and on his sole credit, and had commingled all such hides in tanning, and were surprised thereat, and could not be prepared with any evidence to show the contrary; that since the hearing before the referee they had discovered new and important testimony to show that three-quarters of the hides were purchased with money advanced by them; that on the referee's report judgment was rendered in the replevin suit in favor of the defendant Gallup for the return of the property; that Smith was insolvent, and had never repaid any of the money advanced by them. The orators pray that, on the establishment of the alleged facts, the property may be decreed to them; and the judgment in the replevin suit may be annulled, vacated, and set aside; and if not, that an account may be taken of the proportion of the hides purchased with the money furnished by the orators; and with the money or credit of Smith; and that the orators may be allowed their due proportion of the property. The orators also asked for and obtained an injunction against the further prosecution or enforcement of the judgment in the replevin suit; or the prosecution of the bond given in that suit. The defendants answered the bill, specifically setting out all the proceedings in the suits against Smith and in the replevin suit; and

denied that any of the hides were bought with the money advanced by the orators; and also demur to the bill, as wanting in equity. Evidence was thereupon taken by both parties. This evidence is substantially the same that was before the referee in the replevin suit. It shows that nearly all the hides were purchased by Smith, in his own name, and on his own individual credit, without the use of the credit of the orators, or of money advanced by them, intermingled with his own money. There is no claim, by the orators, that they have any newly-discovered evidence. Hence, there is no occasion to consider whether a party who has been cast in a suit at law can, on newly-discovered testimony, have the judgment at law vacated and set aside, on a bill in chancery. The establishment of such a doctrine, in ordinary cases, would doubtless be a surprise to the profession. The orators' testimony tends to show that they made some advances to carry on the process of tanning the hides while they were under attachment; and also that they advanced quite a sum to complete the process of tanning a portion of the hides after they took them from the possession of the defendant, Gallup, on the suit of replevin. They thereupon obtained leave from the chancellor to file a so-called supplemental bill, alleging these facts. The defendants answered, denying that the orators advanced any money to carry on the process of tanning, while the hides were under attachment, and averring that if they did make such advances after they replevied the hides, it did not concern the defendants, as the hides were valued in the replevin suit in the condition they were in when replevied; and also demurred to the so-called supplemental bill. The facts alleged in the so-called supplemental bill all existed, and were known to the orators at the time they brought the original bill. The usual, and almost exclusive, office of a supplemental bill is to bring upon the record new facts which have transpired, or new parties which have become interested in the subject-matter, subsequently to the bringing of the original bill. Hence, the so-called supplemental bill is more in the nature of an amendment to the original bill. It is claimed by the orators that the facts alleged in the last bill, by whatever name called, require an accounting, and so give a court of equity jurisdiction, if it did

not have jurisdiction on the facts alleged in the original bill. If this is strictly supplemental matter, it cannot confer jurisdiction upon a court of equity if it had no jurisdiction of the original bill. But the evidence, when carefully considered, fails to establish that the orators were at any expense for tanning the hides in controversy while under attachment, prior to the commencement of the replevin suit. They had some western hides in Smith's tannery, on which their claimed expenditures were evidently made. What they expended in completing the tanning of the hides after they received them in the replevin suit is no concern of the defendants, inasmuch as the orators can only be charged with the value of the hides in the condition in which they were at the time they were replevied. The orators admit they have sold the hides, and so cannot return them to the officer. If they had the hides to return to the officer, and they had increased their value materially by necessarily completing the process of tanning, there might be some foundation to the claim, that an account of such expenditures should be taken, and the sum found be repaid by the defendants, before the hides should be returned to the officer. Under the facts of this case, the last bill becomes wholly immaterial, and its further consideration may be dismissed. As we have seen, there is no ground for disturbing the judgment in the replevin suit. So far as the rights of the parties to the hides in controversy were therein adjudicated, the parties are concluded. An inspection of the referee's report shows that the larger part of the hides were purchased by Smith in his own name and on his own credit, without using any of the money advanced by the orator, and also that a small portion of the hides were purchased by him in his own name with the money advanced by the orators commingled with his own money. On this state of facts, the orators themselves, not having knowledge of, or being responsible for, the commingling of the money advanced by them, by Smith with his own money, the hides, so far as they were bought with commingled money, by Smith, in the execution of his agency, became, so far as regards the defendants, as attaching creditors of Smith, the property of the orators, and those bought upon Smith's credit, or with his sole money, in his own name, would be Smith's property;

and as they were commingled and incapable of separation, the orators and Smith would be tenants in common of the hides attached. The defendants, as attaching creditors, would have the right to take in execution and sell only Smith's interest in such hides; but for the purpose of making the attachment and sale of this interest, the officer, Gallup, would have the right to take and retain possession of all such hides, and so have the legal right to have a judgment for their return to him in the replevin suit. *Hall* v. *Williams*, 27 Vt. 405; *Pratt* v. *Bryant*, 20 Vt. 333; *Lewis* v. *Whittemore*, 5 N. H. 364; *Moore* v. *Bowman*, 47 N. H. 494. Hence the judgment in the replevin suit did not necessarily determine that the title to all the hides ordered to be returned was wholly in Smith, but only that Smith had an undivided interest in all the hides attached, and that the officer had the right to have them returned to him that he might sell and make available to the attaching creditors that interest. It is insisted by the orators that, inasmuch as Smith designed that all the hides attached should pass to the orators under the contract of August 1, 1874, they are entitled to hold all of the hides, and they rely upon *Hall* v. *Williams*, supra, and *Safford & Co.* v. *Burgess*, assignee of Reed in in the U. S. Circuit Court, to establish such right. The judgment in the replevin suit is conclusive upon the orators that Smith had some undivided interest, at least, in the hides, which could be reached by the other defendants, through the attachment made by the defendant Gallup; otherwise, no judgment for a return of the hides could have been rendered in that case. The general doctrine of those cases is, that a purchase by an agent, though he do not disclose his principal, with the money of the principal, vests the title of the property purchased in the principal. Nor does it make any difference if some of the money used by the agent in making the purchase was his own, if he was simply advancing it for the principal so as to create a debt from the principal to him. Those cases are clearly distinguishable from this case, in that a greater part of the hides were purchased by Smith by giving his personal notes or credit therefor. By the contract Smith had no authority to pledge the orators' credit. If the orators claim that all these purchases on credit were made by Smith

as their agent, then they are holden to pay the debts contracted by him in making such purchases. On this latter principle the orators would not, in equity, be entitled to relief against the defendants. Smith, before the last attachment, became insolvent, and made an assignment of all his property for the benefit of his creditors *pro rata*. The earlier attachments were turned over by the attaching creditor to the committee of the creditors, and the last attachment was made by them for the benefit of all the creditors. Among these creditors were persons from whom Smith had purchased hides, under the contract of August 1, 1874, and similar former contracts, on his own credit, to a much greater amount than the value of the hides in controversy. If, therefore, the orators claim Smith was their agent in making these purchases on credit, they are legally bound to pay the debts thus contracted by him, and could not in equity be allowed to draw the property out of the hands of the defendants who hold the same for the benefit of such creditors of Smith as well as others. Equity will look beyond the representative parties to the real parties to the proceeding. But, neither by the bill, nor by the evidence, do the orators claim that Smith had authority to pledge their credit in purchasing hides. The contract of August 1, 1874, only authorized him to purchase slaughter hides for the orators with the cash advanced. By his purchases, therefore, they could gain an interest only in such of the hides as he paid money for. The title to the others, purchased in Smith's name, and on his credit, would vest in him, and might be attached and made available by his creditors. On the cases of *Hall* v. *Williams* and *Safford & Co.* v. *Burgess, supra*, it would seem that the title to so many of the hides as were purchased with the commingled money of the orators and of Smith, would vest in the orator, especially as the money advanced to that end by the orators before the attachment, was much larger than the value of all the hides for which money was paid. The purchase in the manner authorized by the orators, and in execution of the agency, vested the title in the orators. But the hides thus purchased were commingled with those purchased by Smith on his own credit. Smith, even, could not distinguish, or select out a single hide which he could say was purchased and paid for with

the commingled money, from those purchased on his personal credit. Hence he and the orators were tenants in common of the hides attached. Do these facts and principles entitle the orators to maintain this bill? We think not. The orators cannot return the hides, as they have put them upon the market and sold them. The defendants' only remedy against them, when this suit was brought, was upon the replevin bond. When sued upon that, the authorities cited by both sides show that the orators could show, in reduction of the damages, the extent of their undivided interest in the hides. *Leonard* v. *Whitney*, 109 Mass. 265. If the hides had been returned in the condition they were in when attached, the officer could have sold only the undivided interest of Smith therein. If the orators should be sued upon the replevin bond, they have an ample and complete remedy at law by reducing the damages to the extent of their interest in the property replevied. We are not aware of any fact or any principle on which the orators' rights, or the extent of them, are dependent, by which their remedy would be more ample, or more complete, in equity, than at law in a suit on the bond. Such a suit would present the single issue of what proportion of the property replevied was purchased by Smith on his credit, or with his money alone, and what proportion did he purchase with the orators' money, or with the commingled money? For its determination no such accounting is involved as requires a resort to a court of equity. The case does not require the ordinary accounting between tenants in common, where the rights of several parties may be involved, or where one tenant in common has received more than his share of the use, or expended more than his proportion for the benefit of the common property. It has become quite too common with some of the profession to bring a bill in chancery in every matter that is somewhat complicated, and in regard to a remedy for which they have no definite present views. Such practice is not to be encouraged. Under the statute, (s. 28, c. 35, Gen. Sts.) releasing sureties on a replevin bond, if not put in suit within a year after the termination of the replevin suit, it is probable that the rights of the parties will have to be settled on the injunction bond. But

however that may be, the orators' bill is wanting in equity, and the demurrer thereto should be sustained.

The *pro forma* decree of the Court of Chancery is affirmed, and the cause remanded, with a mandate to enter a decree dismissing the bill with costs.